UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROBYN MEATHENEY,

        Plaintiff,

                                      Case No. 21-cv-683-pp

    v.

ARTS PERFORMING CENTER, LLC,
DOWNTOWN JUNEAU INVESTMENTS, LLC
*d/b/a Silk Exotic on Water,*
SCOTT KRAHN, and LYLE MESSINGER,

        Defendants.

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS LYLE MESSINGER
AND ALL CLAIMS FROM 2018 (DKT. NO. 13); DENYING DEFENDANTS'
MOTION TO DISMISS PROCEEDINGS (DKT. NO. 16); GRANTING
DEFENDANTS' MOTION TO COMPEL ARBITRATION (DKT. NO. 16);
STAYING LITIGATION AS TO PLAINTIFF'S CLAIMS AGAINST DEFENDANTS
ARTS PERFORMING CENTER, DOWNTOWN JUNEAU INVESTMENTS;
ORDERING PLAINTIFF, ARTS PERFORMING CENTER, DOWNTOWN
JUNEAU INVESTMENTS TO ENGAGE IN ARBITRATION; AND ORDERING
PLAINTIFF, SCOTT KRAHN, LYLE MESSINGER TO FILE RULE 26(F) PLAN**

        On June 2, 2021, the plaintiff filed a complaint on behalf of herself and

others similarly situated, bringing claims related to her employment with the

defendants. Dkt. No. 1. The plaintiff brings five claims under the Fair Labor

Standards Act (FLSA): (1) failure to pay minimum wage, (2) failure to pay

overtime wages, (3) illegal kickbacks, (4) unlawful taking of tips and (5) forced

tipping. Id. at 16-23.

        On July 15, 2021, the defendants filed a motion under Federal Rule of

Civil Procedure 12(b)(1) to dismiss Lyle Messinger as a defendant and to

1

dismiss claims arising from conduct in 2018. Dkt. No. 13. That same day, the defendants filed a motion to dismiss the proceedings and to compel the plaintiff to submit to individualized arbitration. Dkt. No. 15. This order denies both motions to dismiss, grants the motion to compel arbitration as to two of the defendants, stays the litigation as to claims against those two defendants and requires the parties to file a Rule 26(f) plan as to the other defendants.

## I.    Background

### A.    Factual Allegations

The complaint alleges that from fall 2018 to March 2020, the plaintiff worked at the defendant's business in Milwaukee, Wisconsin; the complaint identifies the "facility" as "Art's Performing Center"[1] and "Silk Exotic on Water," indicating that the name changed while the plaintiff worked there. Dkt. No. 1 at ¶2-3. It asserts that while working at the defendants' facility, the plaintiff qualified as an "employee" as defined in 29 U.S.C. §203(e)(1). Id. at ¶9. The complaint describes the FLSA Collective Members as "all current and former exotic dancers who worked at ART'S PERFORMING CENTER and SILK EXOTIC ON WATER located at 144 East Juneau Avenue, Milwaukee, Wisconsin, 53202 at any time starting three (3) years before [the complaint] was filed, up to the [date of filing]." Id. at ¶10. Defendants Arts Performing Center d/b/a Silk Exotic on Water and Downton Juneau Investments, LLC both are Wisconsin LLCs with principal places of business in Wisconsin. Id. at ¶11-12. The

---

[1] The complaint identifies the defendant as "Art's"—in the possessive—Performing Center. The contracts the defendants provided in support of one of their motions identifies the defendant as "Arts"—plural—Performing Center.

complaint alleges that "[a]t all times mentioned herein, Defendant was an 'employer' or 'joint employer' as defined by the FLSA, 29 U.S.C. § 203(d) and (g)." Id.

The complaint claims that defendant Scott Krahn "was/is one of the main manager(s)/owner(s) who executed the policies regarding payment to dancers and management of dancers, including Plaintiff." Id. at ¶13. It asserts that defendant Lyle Messinger "was the main manager/owner who executed the policies regarding payment to dancers and management of dancers, including Plaintiff, during the first part of Plaintiff's tenure, until the purchase of the club by DOWNTOWN JUNEAU INVESTMENTS, LLC dba SILK EXOTIC ON WATER." Id. at ¶14. Krahn was employed by Silk and acted "directly or indirectly on behalf of Silk." Id. at ¶15. The complaint alleges that Krahn controlled the nature of the pay structures and the employment relationships of the plaintiff and the FLSA Collective Members, that Krahn had direct supervision over the work of employees and authority over the business' checking accounts and that he was "responsible for the day-to-day affairs of Silk." Id. The complaint alleges that prior to the purchase by Silk, Messinger acted on Silk's behalf, "exerted operational and management control over Silk," was frequently present, controlled the pay structures and employment of the plaintiff and the FLSA Collective members, had hiring and firing authority, had check-signing authority for the business and was responsible for Silk's day-to-day affairs (including its compliance with the FLSA). Id. at ¶16.

3

The complaint alleges that "DOES 1-10 are the managers/owners/employees or agents who control the policies and enforce the policies related to employment at Silk." Id. at ¶17.

The complaint asserts that the defendants have had annual gross business volume that qualifies them for coverage by 29 U.S.C. §203. Id. at ¶20. It maintains that during the relevant period, the defendants "categorized all dancers/entertainers employed at Silk as 'independent contractors' and have failed and refused to pay wages or compensation to such dancers/entertainers." Id. at ¶21.

The complaint alleges that "[d]uring her time being employed by Defendants, Plaintiff was denied minimum wage payments and denied overtime as part of Defendants' scheme to classify Plaintiff and other dancers/entertainers as 'independent contractors.'" Id. at ¶2. It contends that the defendants did not pay their entertainers on an hourly basis and that they set prices for all performances, as well as the daily cover charge for customers to enter the facility, and that they had complete control over which customers or members could enter. Id. at ¶¶36, 38-39. The complaint says that the defendants controlled the music for the plaintiff's performances and the ways in which she could perform. Id. at ¶¶40-41. The defendants had the authority to suspend, fine, fire and discipline dancers who didn't comply with their rules, and did so. Id. at ¶¶42-43. The complaint alleges that the plaintiff was compensated exclusively through tips from the customers—the defendants did not pay her anything—and the defendants required her to share her tips with

4

the defendants and other employees such as the managers, disc jockeys and bouncers. Id. at ¶¶45-46. The complaint asserts that the defendants "exercised significant control over Plaintiff during her shifts and would demand that Plaintiff pay to work a particular shift." Id. at ¶37. It alleges that the defendants failed to maintain financial records such as records of wages, fines, tips and gratuities paid or received by entertainers. Id. at ¶58. The complaint also alleges that the defendants required the plaintiff to pay "fees" to them and to other Silk employees such as managers, DJs and doormen, "for reasons other than the pooling of tips among employees who customarily and regularly received tips." Id. at ¶¶73-74.

The complaint asserts that "[a]lthough Defendants allowed entertainers to choose their own costumes, Defendants reserved the right to decide what a particular entertainer was allowed to wear on the premises" and that "[i]n order to comply with Silk'[s] dress and appearance standards, Plaintiff typically expended approximately an hour of time each shift getting ready for work without being paid any wages for such time getting ready." Id. at ¶44. It alleges says that this process took two hours to complete and that the plaintiff spent her own money on her hair, makeup and outfits for her work; the plaintiff estimates that she spent some $500 a year on makeup, hair-related expenses and clothing. Id. at ¶61.

The complaint alleges that the FLSA Collective Members were subject to the same pay structure and "were under the same controls" as the plaintiff. Id. at ¶62. The complaint alleges that the FLSA Collective Members typically

5

worked more than forty hours in a week, never were paid wages, were paid only in gratuities from customers and were required to pay the defendants "for the privilege of working." Id. at ¶¶63-65. They were not paid time and a half for hours worked in excess of forty hours a week. Id. at ¶66.

      B.    <u>Claims</u>

The plaintiff first claims that the defendants failed to pay her and the FLSA Collective Members minimum wage in violation of 29 U.S.C. §206. Id. at ¶¶102-108. She asserts that the defendants "knowingly, intentionally and willfully violated the FLSA by not paying Plaintiff the minimum wage under the FLSA." Id. at ¶106. She seeks "minimum wage compensation and an equal amount in the form of liquidated damages." Id. at ¶108.

Second, the plaintiff claims that the defendants failed to pay her and the FLSA Collective Members overtime wages in violation of 29 U.S.C. §207. Id. at ¶¶109-116. She alleges that the defendants "failed to pay Plaintiff the applicable overtime wage for each hour in excess of forty (40) during each workweek in which she worked." Id. at ¶113.

Third, the plaintiff claims that the defendants "required Plaintiff to pay monetary fees to Defendants and other Silk employees who did not work in positions that are customarily and regularly tipped, in violation of 29 U.S.C. §203(m)." Id. at ¶118. She also asserts that this requirement "violated the 'free and clear' requirement of 29 C.F.R. §531.35." Id. at ¶119. She also makes these claims on behalf of the FLSA Collective Members.

6

Fourth, the plaintiff claims that the defendants' tip policy violated 29 U.S.C. §203 and the Tip Income Protection Act. Id. at ¶¶123-137. She asserts that "[b]y requiring Plaintiff to pool her tips with club management, including the individual Defendants named herein, Defendants 'retained' a portion of the tips received by Plaintiff." Id. at ¶132. Again, she makes this claim on her own behalf and on behalf of the FLSA Collective Members.

Finally, the plaintiff claims on behalf of herself and the FLSA Collective Members that the defendants' tip policy constituted forced tipping in violation of 29 U.S.C. §203(m) and 29 C.F.R. §531.35. Id. at ¶¶139-40.

## II. Motion to Dismiss Lyle Messinger and Claims Arising from 2018 (Dkt. No. 13)

### A. Parties' Arguments

The defendants move to dismiss Lyle Messinger and any claims that arise from the year 2018 for lack of subject matter jurisdiction, asserting that "no Defendants were subject to the Federal[2] Labor Standards Act during that year." Dkt. No. 13 at 1. The defendants argue that before and during the year 2018, Lyle Messinger was the sole owner of Arts Performing Center. Id. at 2. They assert that neither defendant Krahn nor defendant Downtown Juneau Investments, LLC had any business interest in Arts Performing Center in 2018; they claim that Downtown Juneau Investments did not exist until February 19, 2019, the date of its organization. Id.

---

[2] The short title of the legislation is the "Fair Labor Standards Act." 29 U.S.C. §201.

Case 2:21-cv-00683-PP   Filed 03/29/22   Page 7 of 31   Document 31

The defendants assert that during 2018, Messinger and Arts Performing Center were struggling financially, and Messinger decided to close down the club and move to Texas. Id. He sold the business to Downtown Juneau Investments on March 4, 2019, which reopened it in May 2019 as Silk Exotic Gentlemen's Club on Water. Id. The defendants assert that during 2018, Messinger—through Arts Performing Center, LLC—had annual gross revenues of $207,388.00. Id. at 3. They maintain that Messinger did no business at Arts in 2019 and had no gross receipts from Arts for that year. Id.

The defendants argue that the FLSA is inapplicable to Messinger because it does not regulate entities with annual gross revenues below $500,000. Id. at 3-4 (citing Morgan v. SpeakEasy, LLC, 625 F. Supp. 2d 632, 647 (N.D. Ill. 2007); 29 U.S.C. §203(s)). Id. They assert that because they are making a factual challenge to the court's jurisdiction, the court may look beyond the four corners of the complaint and consider other evidence they have provided (such as Messinger's tax returns). Id. (citing, e.g., Apex Digital, Inc. v. Sears, Roebuck & Co., 572 F.3d 440, 444 (7th Cir. 2009)).

The plaintiff responds that Rule 12(b)(1) is not the proper mechanism for attacking the application of the FLSA; she asserts that the defendants are attacking the merits of the claim, rather than subject-matter jurisdiction. Dkt. No. 20 at 2. She points to case law holding that the question of whether an "employer's annual gross volume of sales satisfies the enterprise coverage requirement involves issues of fact that cannot be resolved on a Rule 12(b)(1) motion." Id. at 5 (citing Torres v. Pallets 4 Less, Inc., No. 14 CV 4219, 2015 WL

920782, at *2 (N.D. Ill. Mar. 2, 2015); Rivas v. Marcelo Hand Car Wash, Inc., No. 10 C 1396, 2010 WL 4386858, at *1 (N.D. Ill. Oct. 28, 2010); Rivera v. Heights Landscaping, Inc., No. 03 C 6428, 2004 WL 434214, at *1 (N.D. Ill. Mar. 5, 2004)). The plaintiff argues that a judge in the Eastern District of Wisconsin has held the same, citing Wolfe v. SL Mgmt. Servs. LLC, No. 16-CV-139, 2016 WL 2588170 (E.D. Wis. May 4, 2016). Id. at 6. The plaintiff cited to other courts in other circuits that had made similar rulings. Id. at 7.

The plaintiff asserts that if the court decides to treat the defendants' motion as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), it cannot rely on information outside the four corners of the complaint. Id. at 7-9. She maintains that she has sufficiently pled the facts necessary to support a FLSA claim. Id. at 10-12.

The plaintiff also argues that the motion is untimely; she argues that because the defendants were served on June 17, 2021, their responsive pleadings were due by July 8, 2021 but that they did not file the motion until July 15, 2021. Id. at 5.

The defendant's reply reiterates its original motion. Dk. No. 24.

B.    Analysis

   1.    *Timeliness*

The affidavit of service indicates that Messinger was served on June 19, 2021. Dkt. No. 7-1. Krahn, Downtown Juneau Investments, LLC and Arts Performing Center were served on June 17, 2021. Dkt. Nos. 9-1, 10-1, 11-1.

9

The defendants filed their motion on July 15, 2021, dkt. no. 13—twenty-six days and twenty-eight days later, respectively.

But the defendants moved to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). "Objections to subject-matter jurisdiction . . . may be raised at any time," including after trial and even if the party previously acknowledged the court's jurisdiction. Henderson *ex rel.* Henderson v. Shinseki, 562 U.S. 428, 434-35 (2011) (citations omitted); Fed. R. Civ. P. 12(h)(3).

The motion was timely filed.

2.    *Subject-Matter Jurisdiction*

The defendants assert that they are raising a factual attack on the court's subject-matter jurisdiction. "[W]hen considering a motion that launches a factual attack against jurisdiction, '[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact such subject matter jurisdiction exists.'" Apex Digital, 572 F.3d at 444 (quoting Evers v. Astrue, 536 F.3d 651, 656-57 (7th Cir. 2008)) (citation omitted). "[T]he court may consider and weigh evidence outside the pleadings to determine whether it has power to adjudicate the action." Id. (citing Venezuela v. Helmerich & Payne Int'l Drilling Co., ___ U.S. ___, 137 S.Ct. 1312, 1316 (2017)).

The FLSA's minimum wage and overtime compensation requirements apply to employees who are "employed in an enterprise in commerce or in the

10

production of goods for commerce." 29 U.S.C. §206(a). Under 29 U.S.C. §203(s)(1), an "enterprise engaged in commerce or in the production of goods for commerce" is defined as an enterprise that

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately slated).

The defendants are correct that an enterprise is not subject to the FLSA's requirements if its annual gross volume of sales or business done was less than $500,000.

But the $500,000 threshold is not a *jurisdictional* requirement; it is an element of the cause of action. The plaintiff has invoked the court's federal question jurisdiction under 28 U.S.C. §1331. Dkt. No. 1 at §26. In Arbaugh v. Y&H Corp., 546 U.S. 500, 511 (2006), the Supreme Court observed that "'[s]ubject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by federal law asserted as the predicate for relief—a merits-related determination.'" (citing 2 J. Moore *et al.*, MOORE'S FEDERAL PRACTICE §12.03(1), p. 12-36.1 (3d ed. 2005)). The Court concluded that "[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue." Id. at 515-16 (citation omitted). "But when Congress does not rank a statutory limitation on coverage as jurisdictional,

courts should treat the restriction as nonjurisdictional in character." Id. at 516. The Court called this test a "readily administrable bright line." Id.

The Seventh Circuit—in the context of Title VII and the ADEA—has held that "the failure to meet the statutory definition of an employer . . . is not a defect of subject matter jurisdiction but an ordinary failure to meet the statutory requirement." Sapperstein v. Hager, 188 F.3d 852, 855 n.1 (7th Cir. 1999) (citing Komorowski v. Townline Mini-Mart and Restaurant, 162 F.3d 962, 964 (7th Cir. 1998)). District courts in the Seventh Circuit have applied this principle in the context of the FLSA. See Martinez v. Citizen's Taxi Dispatch, Inc., No. 16 CV 10389, 2017 WL 2311231, *2 (N.D. Ill. May 26, 2017) ("Within this district the court has repeatedly held that 'whether plaintiffs fall within the protection of the FLSA is an issue regarding the merits of their claims, not the court's jurisdiction.'") (quoting Rivera v. Heights Landscaping, Inc., No. 03 CV 6428, 2004 WL 434214, at *1 (N.D. Ill. Mar. 5, 2004)); Manuel Acosta v. KC Farms, LLC, No. 20-2166, 2021 WL 3125525, *2 (C.D. Ill. Apr. 20, 2021); Wolfe v. SL Mgmt. Svs. LLC, No. 16-cv-139, 2016 WL 2588170, *1 (E.D. Wis. May 4, 2016); Torres v. Pallets 4 Less, Inc., No. 14 CV 4219, 2015 WL 920782, *3 (N.D. Ill. Mar. 2, 2015). After declining to dismiss under Rule 12(b)(1), these courts have treated similar motions as motions to dismiss for failure to state a claim. See, e.g., Torres, 2015 WL 920782, at *3. In Wolfe, Judge Griesbach echoed the Supreme Court's language from Arbaugh, stating that the defendants' subject-matter jurisdiction argument "conflate[d] coverage under the FLSA (an issue going to the merits of FLSA claims) with subject-matter

12

jurisdiction." <u>Wolfe</u>, 2016 WL 2588170, at *1. Judge Griesbach succinctly said, "The FLSA is a federal statute providing a federal cause of action, so the Court has subject-matter jurisdiction under 28 U.S.C. § 1331." <u>Id.</u> (citing <u>Rivera</u>, 2004 WL 434214, at *1).

The same is true here. The FLSA says nothing about the $500,000 threshold being jurisdictional. The court has federal subject-matter jurisdiction and there is no basis to dismiss under Fed. R. Civ. P. 12(b)(1).

        3. *Failure to State a Claim*

The plaintiff anticipated that the court might treat the motion as a motion for failure to state a claim and argues the court should deny it in that context. The court agrees that even had the defendants filed this motion as a motion for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court would have denied it.

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits." <u>Jackson v. DeBruyn</u>, 25 F.3d 1053 (Table), *5 (7th Cir. May 6, 1994) (citing <u>Gibson v. City of Chi.</u>, 910 F.2d 1510, 1520 (7th Cir. 1990)). When evaluating a motion to dismiss under Rule 12(b)(6), the court must "accept all well-pleaded facts as true and draw all reasonable inferences in favor of the non-moving party." <u>United States *ex rel.* Prose v. Molina Healthcare of Ill., Inc.</u>, 10 F.4th 765, 771-72 (7th Cir. Aug. 19, 2021) (citing <u>O'Brien v. Vill. of Lincolnshire</u>, 955 F.3d 616, 621 (7th Cir. 2020)). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege

"enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

The defendants argue that Messinger and Arts Performing Center's gross revenue for 2018 was less than $500,000. Id. This was not alleged in the complaint. The defendants provided the information through an affidavit from Messinger, to which the defendants attached Messinger's tax returns for 2018 and 2019. Dkt. Nos. 14, 14-2, 14-2.

"Generally, a district court cannot consider evidence outside the pleadings to decide a motion to dismiss without converting it into a motion for summary judgment." Jackson v. Curry, 888 F.3d 259, 263 (7th Cir. 2018) (citing Tierney v. Vahle, 304 F.3d 734, 738 (7th Cir. 2002)). "District courts may, however, consider other documents attached to a motion to dismiss when they are referenced in the complaint and central to the plaintiff's claim." Lax v. Mayorkas, 20 F.4th 1178, 1181 n.1 (7th Cir. 2021) (citing 188 LLC v. Trinity Indus., Inc., 300 F.3d 730, 735 (7th Cir. 2002)).

Messinger's affidavit and his tax returns are evidence outside the pleadings. The complaint does not reference his income or that of any of the defendants. The plaintiff has argued that she deserves the opportunity to conduct discovery in order "to rebut or verify the accuracy and veracity of Defendant's claims." Dkt. No. 20 at 3. The court will not consider Messinger's affidavit or tax returns in considering whether the complaint states a claim upon which a federal court may grant relief.

The complaint alleges that

14

19. At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §203(r)(1) of the FLSA because they have had employees at their clubs engaged in commerce, which has travelled in interstate commerce. Moreover, because of Defendants' interrelated activities, they function in interstate commerce. 29 U.S.C. §203(s)(1).

20. Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard.

Dkt. No. 1 at ¶19-20.

The court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded facts as true, and draw reasonable inferences in the plaintiff's favor." Taha v. Int'l Bhd. of Teamsters, Local 781, 947 F.3d 464, 469 (7th Cir. 2020) (citing Yeftich v. Navistar, Inc, 722 F.3d 911, 915 (7th Cir. 2013)). Doing so, the court concludes that the plaintiff has sufficiently alleged that the defendant was an enterprise as defined by the FLSA.

The court will deny without prejudice the defendants' motion to dismiss Lyle Messinger and the claims arising from 2018. Dkt. No. 13.

## III. Motion to Dismiss Proceedings and Compel Arbitration (Dkt. No. 16)

The same day that the defendants filed their Rule 12(b)(1) motion to dismiss, they filed a motion to dismiss the entire case and to compel the plaintiff to submit to individualized arbitration. Dkt. No. 16.

### A. Parties' Arguments

The motion asks the court to dismiss under Fed. R. Civ. P. 12(b)(1) or, alternatively, under Rule 12(b)(3) (improper venue) and 9 U.S.C. §3; it also asks

the court to compel arbitration. Dkt. No. 16.[3] The defendants assert that the plaintiff executed an agreement to arbitrate on the date of Silk's opening—May 29, 2019. Id. at 2. They attached copies of the agreement to the motion. Dkt. No. 17-2.

The defendants argue that according to the director of operations for Silk, the plaintiff became eligible to perform at Silk only after she executed a performance lease. Dkt. No. 16 at 8. They say that paragraph eighteen of the lease provides that all legal disputes will be resolved through arbitration and that both the owner and the entertainer waive jury trial. Id. The defendants argue that Wisconsin presumes such provisions to be valid. Id. (citing Wis. Auto Title Loans, Inc. v. Jones, 290 Wis. 2d 514, 715 (2006)). They also assert that the issues raised in the plaintiff's claims are "squarely within the scope of the agreement to arbitrate" and that her lawsuit "demonstrated her refusal to participate in arbitration." Id. at 10.

The plaintiff responds that this motion also was filed too late. Dkt. No. 21 at 3 (citing Fed. R. Civ. P. 12(a)). She says that if the court does not deny the motion, she would be willing to submit her claims to arbitration, but that the agreement "contains an unlawful cost-shifting provision that would potentially require [the plaintiff] to reimburse Defendants' costs." Id. The plaintiff points to a portion of a clause in the agreement which appears to require her to

---

[3] On July 15, 2021, the defendants filed a supplement to their motion to dismiss. Dkt. No. 18. This supplement addressed two potential collective members who had filed opt-in notices. Dkt. No. 2 (Lanikiquia Taylor) and Dkt. No. 3 (Lazirra Burris). These two individuals have not filed lawsuits and are not named plaintiffs, and the court has not certified a collective class.

reimburse the defendants if the defendants prevail. Id. at 5-6. She argues that this provision conflicts with the FLSA's provision allowing only plaintiffs to be awarded fees and costs. Id. at 5-6 (citing 9 U.S.C. §216(b)). She asserts that a defendant can be awarded attorneys' fees only if a court determines that the plaintiff engaged in litigation in bad faith. Id. at 7. The plaintiff argues that the reimbursement clause does not separate good faith from bad faith claims. Id. at 8. She argues that "[s]uch a provision is in violation of the [FLSA], 29 U.S.C. §§ 201, *et seq*, and must be [severed]." Id. at 3.

The plaintiff then requests that any claims compelled to arbitration be stayed pending potential settlement because FLSA settlements require district court or U.S. Department of Labor approval. Id. at 8-9. She argues that there remains a possibility that the parties could settle and that the court then would be required to approve such a settlement. Id. at 8-9. She asserts that a stay is proper under 9 U.S.C. §3. Id. at 9.

The defendants reply that the arbitrator is the appropriate entity to determine whether any portions of the agreement should be severed. Dkt. No. 22 at 2. They maintain that under the agreement the plaintiff would not be required to reimburse the defendants in an amount greater than she would be subject to in district court. Id. at 3. The defendants point to the second half of the sentence to which the plaintiff cites, which states that "the amount of such reimbursement may not exceed the costs that could have been assessed in an equivalent action in circuit or district court." Id. The defendants argue that if

17

they prevail at arbitration, the plaintiff would be required only to reimburse the defendants for the filing fee. Id. at 4.

The defendants assert that the proper remedy is for the court to dismiss the case. Id. at 5. They argue that if the court agrees that the case should go to mediation, the court no longer will have subject-matter jurisdiction to stay the case or to hold it open. Id. (citing Cont'l Cas. Co. v. Am. Nat'l Ins. Co., 417 F.3d 727, 732, n.4, 5 (7th Cir. 2005)).

B.    Analysis

1.    *Timeliness*

As she did with the motion to dismiss Messinger and the 2018 claims, the plaintiff argues that this motion is tardy because it was not filed within twenty-one days of the date the defendants were served with the complaint. But the Seventh Circuit has held that "applying the 21-day time limit to motions under Rule 12 would require 'an overly strict interpretation of the language of Rule 12(a) and Rule 12(h)(1).'" Hedeen Intern., LLC v. Zing Toys, Inc., 811 F.3d 904, 906 (7th Cir. 2016) (citing 5C Wright & Miller, FED. PRAC. & PROC. CIV. §1391 (3d ed. 2004, supp. 2015) (in the context of a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2)). The court concluded that on its face, Rule 12(a) does not impose a twenty-one-day rule on a *motion* that raises the defense of lack of personal jurisdiction; it imposes a twenty-one-day rule only on a *responsive pleading*—an *answer.* Rule 12(b), which governs defenses raised in motions, sets no such time limit. Id. at 905.

18

The court deems the motion timely.

       2.    *Motion to Dismiss*

The defendants have styled their motion as both a motion to dismiss the proceedings and a motion to compel the plaintiff to submit to arbitration. Dkt. No. 16. The motion seeks dismissal under three, separate vehicles: Fed. R. Civ. P. 12(b)(1) (a motion to dismiss for lack of subject-matter jurisdiction); Fed. R. Civ. P. 12(b)(3) (a motion to dismiss for improper venue); and 9 U.S.C. §3 (the section of the Federal Arbitration Act that requires a stay of trial when a court determines that a case is referable to arbitration under a written agreement). Id.

       a.    Lack of Subject-Matter Jurisdiction—Rule 12(b)(1)

As noted above, a motion to dismiss under Rule 12(b)(1) asks the court to dismiss because the court lacks subject-matter jurisdiction. In Dylan 140 LLC v. Figueroa as Trustee of Building Service 32BJ Health Fund, 982 F.3d 851 (2d Cir. 2020), the appellees argued that the district court should have dismissed a complaint under Fed. R. Civ. P. 12(b)(1) because they had initiated arbitration proceedings under certain provisions of a collective bargaining agreement and thus the appellant was required to arbitrate. Id. at 854-55. The Second Circuit disagreed and addressed the issue "only briefly to clarify that the court did have federal question jurisdiction." Id. at 855.

> The [appellees] confuse whether the district court had subject matter jurisdiction with whether [the appellant] stated a proper cause of action in its complaint, but "it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Bell v. Hood*, 327 U.S. 678, 682 . . . (1946). "Federal question jurisdiction exists

19

whenever the complaint states a cause of action under federal law that is neither 'clearly … immaterial and made solely for the purpose of obtaining jurisdiction' nor 'wholly insubstantial and frivolous.'" *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 701 (2d Cir. 2000) (quoting *Bell*, 327 U.S. at 682-83 . . . ). Here, [the appellant's] complaint asserts federal question jurisdiction arising under, *inter alia*, Section 301 of the LMRA, 29 U.S.C. § 185. This claim is neither insubstantial nor frivolous. . . . Accordingly, the district court had jurisdiction to decide whether [the appellant] was entitled to the declaratory relief requested . . . .

Id. at 855-56.[4]

The Eighth Circuit came to the same conclusion, finding that "an arbitration agreement has no relevance to the question of whether a given case satisfies constitutional or statutory definitions of jurisdiction." City of Benkelman, Neb. v. Baseline Engineering Corp., 867 F.3d 875, 880-81 (8th Cir. 2017). In reaching that decision, the Eighth Circuit cited Auto. Mech. Local 701 v. Vanguard Car Rental, 502 F.3d 740, 743 (7th Cir. 2007). In Vanguard, the district court had *sua sponte* dismissed an ERISA lawsuit because it concluded that the parties were required to arbitrate. Id. at 743. The Seventh Circuit found that dismissal was improper, stating that "[e]nforcement of a forum selection clause (including an arbitration clause) is not jurisdictional; it is a waivable defense that [the appellee], in fact, waived." Id.

Under 28 U.S.C. §1331, a federal court has jurisdiction over cases arising under laws of the United States. The plaintiff has raised claims under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*, and the regulations that

_____

[4] The Fifth Circuit reached the opposite conclusion in a case that also involved Section 301 of the Fair Labor Standards Act. See Commc'ns Workers of Am., AFL-CIO v. Sw. Bell Tel. Co., 781 Fed. App'x 339, 343-44 (5th Cir. 2019).

support that federal statute. Dkt. No. 1. The claims are not insubstantial or frivolous. The defendants have not pointed to any provision of the FLSA under which an arbitration clause deprives a court of jurisdiction. The court will deny the motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1).

b.     Improper Venue—Rule 12(b)(3)

In 2003, the Seventh Circuit held that "[a] lack of venue challenge, based upon a forum-selection clause, is appropriately brought as a Rule 12(b)(3) motion to dismiss." Continental Ins. Co. v. M/V ORSULA, 354 F.3d 603, 606-07 (7th Cir. 2003) (citations omitted). Six years later, the Seventh Circuit held that

> [w]hen an arbitration clause in a contract includes a forum selection clause, "only the district court in that forum can issue a § 4 order compelling arbitration. Otherwise, the clause of § 4 mandating that the arbitration and the order to compel issue from the same district court be meaningless." *Merrill Lynch, Pierce, Fenner & Smith v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995). When a complaint requesting arbitration is filed in the wrong forum, the appropriate response is for the opposing party to file a motion to dismiss, which should then be granted by the court. See *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005).

Haber v. Bioment, Inc., 578 F.3d 553, 558 (7th Cir. 2009). See also, Faulkenberg v. CB Tax Franchise Sys., LP, 637 F.3d 801, 808 (7th Cir. 2011) (where an arbitration clause "requires arbitration outside the confines of the district court's district," "a Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or a motion to compel arbitration, is the proper procedure to use.").

21

In 2013, however, the United States Supreme Court decided Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex., 571 U.S. 49 (2013). In Atlantic Marine, the petitioner asserted that "a party may enforce a forum-selection clause by seeking dismissal of the suit under [28 U.S.C.] § 1406(a) and Rule 12(b)(3)." Id. at 55. The Supreme Court disagreed, concluding that the statute and the rule "allow dismissal only when venue is 'wrong' or 'improper,'" and "[w]hether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." Id. The Court explained that the question of whether venue is proper is governed by 28 U.S.C. §1391, which

> [p]rovides that "[a] civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." § 1391(b).

Id.

The Atlantic Marine Court held that when a party challenges venue, the only question is whether the case falls into one of those three categories; "[w]hether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)." Id. at 56. "[A] case filed in a district that falls within § 1391 may not be dismissed under § 1406(a) or Rule 12(b)(3)." Id.

22

This case falls into two of the §1391 categories. According to the complaint, all four defendants are Wisconsin residents and the corporate defendants have their principle places of business in the Eastern District of Wisconsin, dkt. no. 1 at ¶¶11-14, and all the events or omissions giving rise to the claims occurred in the Eastern District of Wisconsin. Venue is proper in the Eastern District. The court has no basis to dismiss the case for improper venue under Rule 12(b)(3), even if the arbitration agreement's forum selection clause did not specify Milwaukee, Wisconsin as the place of arbitration (which it does, Dkt. No. 17-2 at ¶1).

c.    9 U.S.C. §3

Finally, the defendants cite 9 U.S.C. §3—a provision of the Federal Arbitration Act—in support of their motion to dismiss. Section 3 provides that

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the term of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Section 3 says nothing about dismissal. It says that if the court determines that the suit has been brought on an issue that is referable to arbitration, then upon a party's request, the court must stay the litigation until the arbitration is completed. Section 3 of the FAA is not a basis for the court to *dismiss* the proceedings.

The Eighth Circuit has described a "judicially-created" exception to the §3 requirement that a court stay litigation until arbitration has completed, "which indicates district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration." <u>Green v. SuperShuttle Intern., Inc.</u>, 653 F.3d 766, 769-70 (8th Cir. 2011) (citing <u>Jann v. Interplastic Corp.</u>, 631 F. Supp. 2d 1161, 1167 (D. Minn. 2009)). While the Seventh Circuit does not appear to have addressed this issue recently, older precedent indicates that the Seventh Circuit considers stay, not dismissal, the appropriate response if a district court concludes that the case must go to arbitration. <u>Halim v. Great Gatsby's Auction Gallery, Inc.</u>, 516 F.3d 557, 561 (7th Cir. 2008) ("As this Court has noted on numerous occasions, 'the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss it outright.") (citing <u>Cont'l Cas. Co.</u>, 417 F.3d at 732 n.7; <u>Tice v. Am. Airlines, Inc.</u>, 288 F.3d 313, 318 (7th Cir. 2002)).

If the court grants the defendants' motion to compel arbitration, stay—not dismissal—seems especially prudent given the circumstances of this case. While the Seventh Circuit has not addressed the question of whether stipulated agreements under the FLSA require court approval, district courts in the Seventh Circuit routinely require such approval. <u>Rambo v. Global Diversified, Inc., et al.</u>, No. 4:20-cv-04212-SLD-JEH, 2021 WL 262556, at *1, n.2 (C.D. Ill. Jan. 26, 2021) (citing, <u>e.g.</u> <u>Salcedo v. D'Arcy Buick GMC, Inc.</u>, 227 F. Supp. 3d 960, 961 & n.1 (N.D. Ill. 2016); <u>Paredes v. Monsanto Co. et al.</u>, No. 4:15-CV-

24

088 JD, 2016 WL 1555649, at *1 (N.D. Ind. Apr. 18, 2016); Ellison v. Nisource, Inc., No. 2:15-CV-59-TLS, 2016 WL 782857, at *1-2 (N.D. Ind. Feb. 19, 2016)). But see Martin v. Spring Break '83 Prods. L.L.C., 688 F.3d 247, 255-56 (5th Cir. 2012) (finding a private settlement of a FLSA suit enforceable where there was a *bona fide* dispute between the parties over the hours worked although no court previously had approved the settlement). This court has required such approval. See, *e.g.*, Brooks v. Sherman Phoenix LLC, No. 20-cv-35-pp, 2021 WL 977071, *1 (E.D. Wis. Mar. 16, 2021). If the parties were to settle prior to resolution by an arbitrator, they would need the court's approval of that settlement. It makes little sense for the court to dismiss the case when the parties might be required to move to reopen in order to approve a subsequently agreed-upon settlement.

Nor would arbitration resolve the case in its entirety. Messinger was not a party to either the entertainment lease or the arbitration agreement, nor was Krahn. Dkt. Nos. 17-1, 17-2. The court has denied the defendants' motion to dismiss Messinger. It is not clear that arbitration would resolve the claims against Messinger and Krahn.

The court will deny the defendants' motion to dismiss under 9 U.S.C. §3.

3. *Motion to Compel Arbitration*

The defendants have asked the court to compel arbitration, but oddly, have not cited the statutory provision that allows such a motion. Section 4 of the FAA states:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition

any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

* * * *

. . . [U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

Under the FAA, "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." Henry Schein, Inc. v. Archer and White Sales, Inc., ___ U.S. ___, 139 S. Ct. 524, 529 (citing Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010)). The FAA requires a court to compel arbitration when there is (1) "a written agreement to arbitrate," (2) "a dispute within the scope of the arbitration agreement" and (3) "a refusal to arbitrate." Zurich Am. Ins. Co. v. Watt Indust., Inc., 417 F.3d 682, 687 (7th Cir. 2005) (citing 9 U.S.C. §4).

There appears to be no dispute that the plaintiff signed a contract with the defendant, Arts Performing Center, LLC, on May 29, 2019 titled, "2019 Entertainer Performance Lease." Dkt. No. 17-1.[5] The contract includes this provision:

18. **Agreement to Arbitrate Disputes.** Entertainer and Owner agree that any legal disputes that arise will be resolved through

---

[5] "[W]hen considering a motion to dismiss in general, a court may consider matters outside of the pleadings to resolve factual questions pertaining to jurisdiction, process, or indispensable parties." Deb v. SIRVA, Inc., 832 F.3d 800, 809 (7th Cir. 2016) (citation omitted). "Where one party makes a bald claim of venue and the other party contradicts it, a district court may look beyond the pleadings to determine whether the chosen venue is appropriate." Id. at 809-10.

arbitration, and both Entertainer and Owner specifically waive any
right to a jury trial. The Agreement to Arbitrate is set forth in full in
a separate document that is signed in conjunction with this lease.

Dkt. No. 17-1 at ¶18. The last sentence refers to a document titled

"AGREEMENT TO ABRITRATE BUSINESS, LEASE, and CONTRACT

DISPUTES," an arbitration agreement that the plaintiff signed that same day.

Dkt. No. 17-2.

The arbitration agreement states:

1.     Company, Entertainer, and Others agree that any and all
claims, disputes, or controversies between the Company or Others
or any of the other entertainers with whom Company does business,
on the one hand, and Entertainer on the other hand (excepting
claims or disputes that are not subject to arbitration as a matter of
law), shall be resolved by final and binding arbitration in Milwaukee,
Wisconsin before a natural arbitrator agreed upon by the parties
pursuant to the United States Arbitration Act, 9 U.S.C. § 1-16, and
the expedited commercial rules of the American Arbitration
Association (rather than by Wisconsin state law, except as
specifically noted herein).

. . .

19.     Company, Others, and Entertainer waive any and all present
and future rights to participate as a class representative or class
member on any class claim, including any right to class arbitration
or consolidation of individual arbitrations. **COMPANY, OTHERS,
and ENTERTAINER UNDERSTAND AND AGREE THAT BY
SIGNING THIS AGREEMENT, EACH WAIVES ANY RIGHT TO
PARTICIPATE IN A CLASS ACTION OR COLLECTIVE LAWSUIT
OR CLASS ACTION OR COLLECTIVE ARBITRATION** relating to or
growing out of Entertainer's affiliation with Company and that any
claims must be brought as individual claims only. Such claims shall
not and cannot be coupled with any other claims or persons.
Company, Others, and Entertainer agree that it is the intent of the
parties to arbitrate any potential claim solely as an individual
dispute.

20.     **By executing this agreement the parties give up their
rights to litigate in court any and all claims, disputes and
controversies between them**, except those specified above as to

27

which arbitration is not applicable. **Company, Others, and Entertainer understand and agree that by entering into this Agreement, they are WAIVING ANY AND ALL RIGHTS TO A TRIAL BY JURY OR TO PARTICIPATE AS A MEMBER OF ANY CLASS OR COLLECTIVE ACTION. <u>The Entertainer is encouraged to have this Agreement reviewed by her attorney before signing the Agreement.</u>**

<u>Id.</u> at ¶¶1, 19-20 (emphasis in the original). The contracts require that the plaintiff's claims be addressed in arbitration.

The three elements requiring the court to compel arbitration are present. <u>See</u> <u>Zurich</u>, 417 F.3d at 687. The parties entered into a written arbitration agreement. <u>Id.</u> at 4-5. The agreement covers "any and all claims, disputes and controversies" between the owner ("Arts Performing Center, LLC, dba Silk Exotic on Water," dkt. no. 17-2 at 1) and the entertainer (the plaintiff); FLSA claims by the plaintiff against Arts and Silk constitute claims, disputes and controversies between the owner and the entertainer. <u>Id.</u> at ¶1. The plaintiff's choice to file suit in federal court rather than pursue arbitration demonstrates a refusal to arbitrate that preceded the defendant's motion. The court must compel arbitration.

4.    *Severance*

As for the plaintiff's demand that the court sever the cost-shifting portion of the agreement, this is an issue for the arbitrator. The arbitration agreement states:

2.    The Company agrees to advance the filing fees for the Entertainer subject to resolution by the Arbitrator as to whether Entertainer or Company is ultimately responsible for paying such costs. If Entertainer prevails, Company will bear all costs of arbitration. If Company prevails, Entertainer will be required to reimburse Company for costs it advanced on Entertainer's behalf,

28

but the amount of such reimbursement may not exceed the costs that could have been assessed in an equivalent action in circuit or district court.

Dkt. No. 17-2 at ¶2. The plaintiff challenges the enforceability of this provision, arguing that it conflicts with the FLSA's language. Yet the next provision in the agreement states that the arbitrator has exclusive authority over any disputes relating to the enforceability of provisions of the agreement:

> 3.      The Arbitrator shall determine the arbitrability of the claims, disputes, and controversies. The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable. A judgment may be entered on any Arbitrator's decision by any court having jurisdiction thereof.

Id. at ¶3. It is not for the court to decide whether the provision is enforceable.

                    5.      *Summary*

The court will deny the defendants' motion to dismiss but will grant their motion to compel arbitration. Because the court is compelling arbitration, the court will stay the litigation under 9 U.S.C. §3. The court will require the parties to notify the court if they settle the case, at which time the court will lift the stay and the parties may file any motions necessary to obtain approval of the settlement.

The court, however, will stay the case only as to the plaintiff's claims against defendants Arts Performing Center LLC and Downtown Juneau Investments, LLC. The defendants have provided no evidence that Lyle Messinger or Scott Krahn were parties to the entertainment lease or the arbitration agreement. The court will require the parties to file a Rule 26(f) plan

for the plaintiff's claims against Messinger and Krahn. If the parties believe that the court should stay the proceedings on the plaintiff's claims against Messinger and Krahn, they may file a motion or stipulation requesting a stay and explaining why the court should grant that request.

## IV.   Conclusion

The court **DENIES WITHOUT PREJUDICE** the defendants' motion to dismiss the claims against Lyle Messinger and those arising from 2018. Dkt. No. 13.

The court **DENIES WITHOUT PREJUDICE** the defendants' motion to dismiss the proceedings. Dkt. No. 16.

The court **GRANTS** the defendants' motion to compel arbitration under the terms required by the Agreement to Arbitrate Business, Lease, and Contract Disputes. Dkt. No. 16.

The court **ORDERS** that the litigation on the plaintiff's claims against defendants Arts Performing Center LLC and Downtown Juneau Investments, LLC is **STAYED** until the parties have completed arbitration. The court **ORDERS** that if the parties settle prior to the arbitrator's final determination, they must file a motion asking the court to lift the stay and approve the settlement. The court **ORDERS** that by the end of the day on **June 29, 2022**, the parties must file a joint status report, notifying the court of the status of the arbitration.

30

The court **ORDERS** that the parties must file a Rule 26(f) plan for the plaintiff's claims against Messinger and Krahn by the end of the day on **April 29, 2022**.

Dated in Milwaukee, Wisconsin this 29th day of March, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**